## COOK, County Treasurer v POMOZI

Ohio Appeals, 8th Dist, Cuyahoga Co
Decided June 1, 1931

Ray T. Miller, Prosecuting Attorney, and Geo. S. Fenesy, for Cook.

Halle, Haber & Berick, Cleveland, for Pomozi.

**LEVINE, PJ.**

In the original briefs filed by the parties to this suit it seems to be conceded by both sides that the confirmation of the sale was within the sound discretion of the court and that the sole reliance of plaintiff in error was upon the point that in this particular case the court abused its discretion. To quote from the original brief of plaintiff in error on page three: "The great weight of authority holds that under circumstances as outlined 'herein where it appears that the purchase price is grossly inadequate, that it is not mandatory upon the court to confirm a sale, but that the court has the power and the right to exercise sound judicial discretion."

Then follows a long line of authorities to support this statement of the law above quoted. When the matter came before the 'Court of Appeals for oral argument, plaintiff in error's counsel departed from his original position as set forth in the original brief, and he now contends that in a case like this the court has no discretion whatsoever, but that it is bound to refuse to confirm the sale for the reason that the court is without power to confirm a sale in a case like this, unless the amount bid for the property was sufficient to take care of the unpaid taxes.

Defendant in error refers to several opinions of the attorney general of the state of Ohio, the first of which is found in volume One of 1922 Opinions Attorney General of Ohio, page 682. The Prosecutor of Lorain county asked him the following question "What constitutes a legal bid for land sold for delinquent taxes under §5719 GC?" After an analysis of all the statutes and a comparison with others, the opinion says that so far as the sheriff is concerned, he is authorized to accept any bid. Whether the court may in its discretion refuse to confirm is reserved for further consideration. Likewise, whether a deficiency judgment can be taken for the unsatisfied balance is reserved for future consideration.

The last pronouncement cited by the attorney general is found in 27 Department Reports of the State of Ohio, page 111—1928. We shall, quote the following statement:

"It is the duty of the county treasurer when requested by the auditor of the state, to enforce the lien of delinquent taxes and assessments or either, and any penalty thereon, by civil action, for the sale of the premises in the Court of Common Pleas of the county, without regard to the amount claimed; and without regard to the probable amount to be obtained, in the same way mortgage liens are enforced."

It is quite clear that for at least nine years the attorney general has advised every prosecutor who asked his advice and direction, that land must be sold to the highest bidder, even if the full amount of the tax is not offered.

The prosecuting attorney of this county who represents plaintiff in error disagrees with the view expressed by the attorney general. He calls our attention to two particular sections, namely §5718 and §5719. §5718, in substance, provides that the prayer of the petition in a suit brought to foreclose the lien of the state under an unredeemed land tax certificate shall in part be "that the court make an order that said property be sold by the sheriff of the county in the manner provided by law for the sale of real estate on execution."

He then calls our particular attention to §5719 GC, which provides, in part, as follows:

"Judgment shall be rendered for such taxes and assessments, or any part thereof, as are found due and unpaid, and for penalty, interest and costs, for the payment of which the court shall order such premises to be sold without appraisement. From the proceeds of the sale the costs shall be first paid, next the judgment for taxes, assessments, penalties and interest and the balance shall be distributed according to law. The owner or owners of such property shall not be entitled to any exemption against such judgment, nor shall any statute of limitations apply to such action."

It is therefore argued by the prosecutor that by virtue of §5718 and §5719 read together, it becomes apparent that while the property against which the lien is to be foreclosed is to be sold generally in the manner provided by law for the sale of real estate on execution, that all the provision relating to the sale of real estate on execution are not to apply because there is to be no appraisement, nor any exemptions.

The prosecutor maintains that the state has the right to take the property for taxes and to hold the same until it is redeemed by the owner, rather than to allow speculators to purchase such property for little or nothing at the expense of the state and county, and allow it to become delinquent for another four year period, in the meantime having a chance to sell it at a handsome profit, and that the power of the State to collect its taxes does not depend upon nor fluctuate with economic conditions.

While we agree with the prosecutor that measures should be taken to protect the state and county against the rapacity of speculators, who seek to appropriate land sold for taxes for inadequate prices, yet it seems to us that all of this is remedied by vesting the trial court with discretion to confirm or to refuse to confirm the sale under the particular circumstances presented in each case. A protection is thereby afforded to the county and state against the activities of speculators. If the court in a given case finds that the consideration embodied in the bid offered at the sheriff's sale is grossly inadequate, in view of the real value of the land, it then becomes the court's clear duty to refuse to confirm the sale. If, on the other hand, the court is of the opinion that, in view of the present value of the land, the bid embodies the best price that could be obtained for the land, it may then confirm the sale.

In order to adopt the theory of the prosecuting attorney, it would be necessary for the court not merely to interpret the existing law, but in effect to also legislate and supplement the same. §5719 GC empowers the court to render judgment for taxes and assessments found due and unpaid, etc., and for the payment of which the court shall order such premises to be sold without appraisement. The power of the court to make such order in the absence of legislation to the contrary, includes the power to approve the sale if the court found that the price was just and proper.

It will be noticed that in §5719 GC the following language is found: "From the proceeds of the sale the costs shall be first paid, next the judgment for taxes, assessments, penalties and interest and the balance shall be distributed according to law." If the prosecutor's contention be correct that under no circumstances can the court approve such a sale, unless the amount bid is sufficient to pay delinquent taxes, there would be no need to set forth in the statute that the costs shall first be paid. Quite the contrary would be true. The state would be entitled to its delinquent taxes first, for without it no sale could be confirmed. The fact that the Legislature sets forth that the court costs shall first be paid out of the proceeds, contemplates clearly a situation where the proceeds of the sale may not be sufficient to take care of all the taxes.

In the case of **Buckley v Osborn, 8 Ohio, 181-182,** we find a more aggravated situation than could be claimed existed in the present case. It appears that in October 1823 a judgment was recovered in favor of the state for taxes, penalties and interest in the sum of $111.60 with $5.60 costs. In July 1824 the land was offered for sale under the judgment, and was not sold for want of bidders. In December, 1828, it was offered for sale again and was sold to W for 25c. W conveyed his certificate to R and the county auditor made a deed to R. We shall quote from the opinion the

following language which would be pertinent to this case.

"Any person acquainted with the history of the state knows of the difficulty that existed in collection of taxes in early times, and of the difficulty of sustaining sales which were made of lands for the non-payment of taxes." ·Page 183.

"Under the Act of 1822 the land could not be sold unless for the amount of the ·judgment, but under the Act of 1827, it was to be sold to the highest bidder." Page 186.

The upshot of the decision was to hold the sale valid under the particular circumstances. There are considerations of public policy which make it more beneficial to the state to vest the trial court with sound discretion to confirm or not to confirm the sale, depending upon the particular circumstances of each case. It seems to us a greater advantage that the state could take a loss, if necessary, and sell the land at the best price obtainable, so as to make the collection of future taxes on the land more probable. We are unwilling, in any event, to substitute the judgment of the court for that of the Legislature, and we therefore content ourselves with the interpretation of existing laws which, in our opinion do not admit of the viewpoint taken by the prosecuting attorney. We, adopt the contention found in the original brief of the prosecuting attorney that to confirm, or refusal to confirm, a sale of land sold for taxes is within the sound discretion of the court.

On the question as to whether the court abused its discretion, we must of course have recourse to the bill of exceptions. A perusal of same discloses that it consists in the main of remarks of counsel containing no admissions or statements tending to show that the price bid for the land at the sheriff's sale was grossly inadequate, we must, therefore, assume, in the absence of a statement to the contrary, that the court had before it all the circumstances necessary to a proper determination of the matter before it. There is not a vestige of evidence found in the bill of exceptions, even hinting at the fact that the price bid at the sheriff's sale was so out of proportion to the real value of the land as to be deemed gross inadequate. There is no suggestion anywhere as to the real market value of the land at the time of the sale. We cannot, therefore, say upon this record that the court abused its discretion in confirming the sale.

The judgment of the ·Common Pleas Court is, therefore, affirmed.

WEYGANDT, J, and VICKERY, J, concur;